**C. L. PAIT et al., Relators,**

v.

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Respondent.**

No. 13452.

Court of Civil Appeals of Texas.

Houston.

March 23, 1959.

**350**

Frederick W. Robinson, Houston, for relators.

Sewall Myer, Houston, for respondent.

BELL, Chief Justice.

This is an original proceeding by C. L. Pait, J. W. Langham, Alfred H. Wendelken, Sidney Fowler, J. E. McKnight, N. E. Cochran, E. W. Titsworth, T. D. Watkins and J. D. Martin, herein called relators, in

which they ask that we enjoin the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, herein called respondent, from trying relators or any of them on certain charges filed against them by said International and to enjoin any punitive action by said International against them for having filed Cause No. 509,854 in the District Court of Harris County. We granted leave to file the application for injunction on March 17, 1959, after conference with attorneys for both relators and respondent, and set submission for March 19. Respondent through its attorney of record in Cause No. 13,358 waived the issuance and service of process, and thereafter filed a sworn reply to the application, and its attorney argued the case to the Court.

The relators are plaintiffs in Cause No. 509,854, which they filed in the District Court of Harris County against the respondent and certain of its officers. In said cause relators complained that the respondent had illegally created District Lodge No. 60 which would encompass the territorial jurisdiction of Subordinate Lodges Numbers 74, 132 and 577. Relators as members, and in some instances as officers, of Subordinate Lodge No. 74, brought the suit in behalf of themselves individually and in behalf of all similarly situated members of Subordinate Lodge No. 74. We have fully set out the nature of their suit in an opinion handed down in Cause No. 13,358 entitled Pait v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, Tex.Civ.App., 322 S.W.2d 340, on February 19, 1959, which cause was an appeal from the judgment of the 55th District Court of Harris County in Cause No. 509,-854 which had sustained a plea in abatement filed by respondent as one of the defendants in that cause. It suffices here to say that in said Cause No. 509,854 relators charge that the creation of District Lodge No. 60 was illegal because Subordinate Lodge 74 was given no notice or the right to be heard concerning the creation of said District Lodge; that there existed no ground for the creation of such Lodge and the action of the International President and the Executive Council which approved its creation was capricious and arbitrary, and their action was the result of bad faith. They further alleged the action was for the personal aggrandizement of the parties who participated in the act. Then follow extensive allegations as to the manner in which District Lodge No. 60 through its officers and the respondent through District Lodge No. 60 was taking away and interfering with rights and property of Subordinate Lodge No. 74. Then followed allegations that relators were excused from appealing the action of the International President to the Executive Council because such an appeal would be a useless act as the Executive Council had concurred in the act creating the District Lodge.

In our opinion of February 19, we held that the trial court erred in sustaining the plea in abatement and reversed and remanded the case for a hearing on the merits. By overruling the motion for rehearing filed by appellees (including respondent), which we have this day done, we confirm our ruling that relators in this cause are entitled to a trial on the merits in Cause No. 509,854.

Relators in their application for a writ of injunction say that respondent has preferred against each of them the following charges:

"1. (name of accused) has violated the provisions of Article V, Section 5 of the International Lodge Constitution and Article XIV, Section 4 of the Subordinate Lodge Constitution by joining, as a party plaintiff, in the filing, institution of, and engaging in further procedures and activities in, a case filed on July 7, 1958 in the District Court of Harris County, Texas, Number 509,854, and in which case the International Brotherhood of Boilermakers, Iron Ship Builders, Black-

smiths, Forgers and Helpers, AFL-CIO, District Lodge No. 60 of the said International Brotherhood, W. A. Calvin, Joe P. McCollum, Orval C. Logue, John T. Kirtley and Leeland F. Head were named as defendants.

"By the filing and institution of the said case, and engaging in further procedures and activities therein, (name of accused) asserted rights allegedly growing out of his membership in the International Lodge and Subordinate Lodge No. 74, without having first exhausted the procedures for hearing, trial and appeal provided for by the International Lodge Constitution and/or the Subordinate Lodge Constitution.

"2. (name of accused) has endeavored to create dissension, among the members of Subordinate Lodge No. 74, has worked against the interest and harmony of the International Brotherhood and Subordinate Lodge No. 74, and has advocated and encouraged the dissolution of the District Lodge No. 60 of the International Brotherhood, all as defined and proscribed by Article XIII, Section 1 of the Subordinate Lodge Constitution, in this, to-wit: the said (name of accused) has attended and participated in rump meetings and, at such meetings, has advocated the dissolution of District Lodge No. 60."

They further allege that the action of respondent in preferring said charges and proposing to try them before a trial committee of International constitutes contemptuous interference with the jurisdiction of this Court and is done for the purpose of denying relators the right to a trial on the merits of Cause No. 509,854 which this Court said they have. They assert that trial on the charges preferred is for the purpose of coercing them to abandon their suit. They say unless restrained from trying relators on said charges and from taking other punitive measures against them, respondent will in all probability suspend or expel relators from membership in Subordinate Lodge No. 74, and this will result in abandonment of all efforts to obtain relief by other members of Subordinate Lodge No. 74 because they will fear like reprisals. Relators deny that they have, as charged in the second charge against them, endeavored to create dissension among the members of Subordinate Lodge No. 74, or, that they have worked against the interests and harmony of said Subordinate Lodge.

The respondent says that the charges above set out show on their face that relators are charged with creating dissension among the members of Subordinate Lodge No. 74 and with working against the interest and harmony of Subordinate Lodge No. 74, which are unrelated to the subject-matter of the appeal pending before us, which is the right of relators to be heard on the question of the legality of District Lodge No. 74. In its reply 'respondent specifies the only acts and matters which it says will be used as a basis for the trial committee's decision. These specifications are:

"(a) The participation by one or more of Relators in the publishing in the newspapers of articles and statements calculated to create dissention among the members of Subordinate Lodge No. 74 and to injure the interest and harmony between International Brotherhood and Local 74 but unrelated to the creation or continued existence and operation of District 60.

"(b) The participation by one or more of the Relators in the acts of Local 74 in ordering the reduction of field dues below the amounts fixed and put into effect by the International Brotherhood in 1947 and which acts were in violation of the established policies of the International Brotherhood.

"(c) The making by one or more of Relators of untrue statements and the giving of published interviews containing untrue statements and false accusations

against the International Brotherhood and against officers and representatives of the International Brotherhood unrelated to the creation or continued existence and operation of District 60.

"(d) Advocation and encouragement of members of Local 74 to not pay the field dues prescribed and put into effect by the International Brotherhood and the making of untrue statements to members of Local 74 as to the International Brotherhood authorizing the reduction in field dues unrelated to the creation or continued existence of District 60.

"(e) Threatening officials and representatives of the International Brotherhood and the President of Local 74 and other members of Local 74, with violence and the abusing of and unlawfully seeking to intimidate such officers and representatives, President and members of Local 74 and unlawfully interfering with the orderly conducting of the business of Local 74 in the manner prescribed in the International and Subordinate Lodges Constitutions, and also threatening the President of Local 74 and otherwise intimidating him to the extent that for his own personal safety he absents himself from the regular meetings of Local 74.

"(f) Attending and taking part in meetings of Local 74 not authorized by such constitutions and advocating at such meetings actions which are violative of such constitutions which actions are unrelated to the creation or continued existence and operation of District 60.

"(g) The participation and encouragement by one or more of Relators of the establishment of a picket line in the vicinity of the office of District 60 designed to intimidate and which did intimidate and prevent members of Local 74 from accepting employment.

"(h) The participation in acts and conduct at regular meetings of Local 74, which intimidated other members of Local 74 from attending such regular meetings and from participating in the affairs and matters being considered at such regular meetings and disrupting the orderly conduct of such regular meetings entirely unrelated to the creation or continued existence and operation of District 60.

"(i) The participation by one or more of Relators in the diversion of collected field dues to purposes contrary to the established policies of the International Brotherhood unrelated to the creation or existence and operations of District 60.

"(j) The participation in efforts to induce the Senate Racket Committee and its Chairman and Attorney to take action against the International Brotherhood intended and calculated to cause undeserved embarrassment and expense and unjustified adverse publicity against the International Brotherhood and its officers, unrelated to, the creation or continued existence and operation of District 60.

"(k) Participation by one or more of Relators in permitting attorney Robinson & newspaper reporters to be present during a meeting of Local 74 which is in violation of the constitutions of the International Brotherhood and Subordinate Lodge constitutions at which meetings and discussions were had of matters which were detrimental to the International Brotherhood and designed to create dissention among the members of Local 74 and were against the interests and harmony of the International Brotherhood and Local 74 and at which regular meetings one or more of Relators conferred and advised with Attorney Robinson in connection with such matters.

"(l) Participation by one or more of the Relators in the sending of the business agent of Local 74 to Washington to confer with certain public officials and representatives of the State of Texas in an effort to get some character of action taken against the International Brotherhood intended and calculated to cause undeserved embarrassment, expense and adverse publicity against the International Brotherhood

and its officers, unrelated to the creation or continued existence and operation of District 60.

"(m) Participation by one or more Relators in efforts to have the President of Local 74 removed as President of Houston Building & Construction Trades Council and as a delegate to such council, such actions being intended and calculated to cause dissention among the members of Local 74 and to intimidate the President of Local 74 from properly performing his duties as President of Local 74.

"(n) The participation by one or more of Relators in conversations and conferences in Houston, Texas with the attorney for the Senate Racket Committee in an effort to cause embarrassment and unjustified criticism of International Brotherhood and of its officers and representatives and to gain publicity in the newspapers adverse to the International Brotherhood and calculated to cause dissention between members of Local 74 and against the interests and harmony of International Brotherhood and Local 74, unrelated to the creation or continued existence and operations of District 60."

Respondent says that if we enjoin it from trying relators on the specifications which set our charges unrelated to the creation and continued existence of District Lodge 60, we deny it the disciplinary authority conferred by its constitution, and such an injunction would in effect grant immunity to relators during the pendency of the suit from trial for any violation of the International and Subordinate Lodge constitutions, even though such violation be unrelated to the subject matter of the case before us, and that this total suspension of disciplinary power would result in utter chaos in Subordinate Lodge 74. Respondent denies any intent of interfering with the jurisdiction of this Court. It further says that until a trial committee has rendered a decision no one can know whether such decision will interfere with our jurisdiction, and should such decision

do so, the Court has ample authority to enjoin the enforcement of such decision.

The substance of the relators' position is that they have been guilty of no act which calls for disciplinary action, and that efforts to try them for alleged offenses of any nature are but attempts to punish them for filing Cause No. 509,854, and since we have held that under the allegations of their petition they are entitled to maintain the suit, their trial by the International will interfere with our jurisdiction because if they are expelled or suspended, they could not proceed with the suit, and others of their class for whom they also sue would be afraid to make themselves parties to the suit.

The substance of respondent's position is that it intends in no way to infringe upon the jurisdiction of this Court, and intends to try relators on nothing that has to do with the subject-matter of this suit, but it is entitled to try relators for acts allegedly committed by relators which are not related to the subject-matter of the suit which are a violation of the International and Subordinate Lodge constitutions. It says this is essential to the maintenance of discipline for the welfare of Subordinate Lodge 74 and for us to prevent said International from trying them on any charge will cause a breakdown in Subordinate Lodge 74 affairs. Then, it says, if after trial the decision interferes with our jurisdiction, we can restrain enforcement. They further say that even if there be conviction of relators and suspension or expulsion, the class suit remains and may be prosecuted by any members of the class.

■ We have no general power to grant writs to restrain what we might consider legally wrongful acts. We have authority to issue only such writs as are necessary to enforce our jurisdiction. This authority derives from Article 1823, Revised Civil Statutes 1925, Vernon's Ann.Civ.St. art. 1823. City of Palestine v. City of Houston, 262 S.W. 215, appeal for writ

of error dismissed 114 Tex. 306, 267 S.W. 663; Bird v. Alexander, Tex.Civ.App., 288 S.W. 606; Houtchens v. Mercer, 119 Tex. 244, 27 S.W.2d 795; Tex.Jur. Vol. 11B, Sec. 28; 8 Southwestern Law Journal 389. This authority encompasses the authority to issue such writs as are necessary to carry into execution a judgment we have rendered. City of Palestine v. City of Houston, supra. Our jurisdiction, once vested, continues until the Supreme Court of Texas should assume jurisdiction of the cause. City of Palestine v. City of Houston, supra. If the Supreme Court does not assume jurisdiction and our judgment becomes final and our mandate issues to the trial court, our jurisdiction over the cause continues until our judgment has been obeyed in the trial court.

■ We have by our decision in Cause No. 13,358 held that relators are entitled to a hearing in District Court Cause No. 509,854 to determine factually whether the action of the International President and the Executive Council in creating District Lodge No. 60 was arbitrary and capricious and done for the personal aggrandizement of respondent and its officers who are defendants in that cause, and that, if it was, relators need not exhaust their interorganization remedies because such remedies are by appeal to the Executive Council that participated in the action, and such appeal would be a meaningless thing. We have, therefore, authority to enjoin respondent from doing any act which would prevent the trial of this case in the trial court.

■ We hold that to try relators, or any member similiarly situated, for filing Cause No. 509,854, or for cooperating in its filing, prosecution or in preparation for trial, which includes discussing any phase of the proceeding with counsel of their choosing would be contemptuous interference with the jurisdiction of this Court, and such will not be permitted. The subject matter of the suit is fundamentally whether or not District Lodge 60 was legally created, and if it was illegally created,

the protection of the members of Subordinate Lodge 74 from being deprived of their rights as members of the Subordinate by acts of the District Lodge or its officers and those acting through it such as respondent.

It follows that we will issue an injunction against respondent enjoining it from trying relators or any of them on the charge that they filed Cause No. 509,854; that they cooperated with those who filed it; that they consulted with one another, as groups or in meetings of Subordinate 74, about the filing, prosecution or preparation for trial of any phase of such cause; that they consulted with the attorney of their choosing, in groups, individually or in meetings of Subordinate Lodge 74, about the filing, prosecution or preparation for trial of said cause.

Also respondent will be enjoined from prosecuting relators on any charge that they sought, by means that were peaceable, to obtain from the members of Subordinate Lodges 74, 132 and 577, support in the filing of said cause, or to join in petition to International to disband District No. 60.

Relators, however, seek broader relief. They really ask that we enjoin trial of relators on any charge. The theory of such prayer is that actually trial will be because the suit was filed; that suspension or expulsion will result and relators can no longer maintain the suit and other members of the class for whom the suit was brought will be thus intimidated so they will not continue prosecution of the suit.

For us to grant such broad relief would make relators immune from discipline for any act done by them even though it be unrelated to the filing and prosecution of Cause No. 509,854. We think it unnecessary for us to go that far and thus to in effect straightjacket International. We will still have authority until our jurisdiction is superseded by the Supreme Court to issue any additional writs made necessary by subsequent occurrences. We cannot go so far as to hold that relators may not be

tried for offenses unrelated to the creation of District Lodge 60. Should, after trial, it appear that conviction and suspension or expulsion were not warranted by substantial evidence, we could well conclude that such trial and penalty were but subterfuges and really the trial and punishment were for the purpose of interfering with our jurisdiction and could, and would, enter the necessary orders to protect our jurisdiction. The thought has impressed us that we should not prevent the good faith trial of relators on matters the legitimate subject of trial. International has a right to in good faith try its members for offenses violative of its constitution and the Subordinate Lodge Constitution.

If trial of relators should result in suspension or expulsion of some of them, the remainder could prosecute the suit. If they should all be suspended or expelled, the suit would not thereby be defeated. The suit is a class action. It is brought for the benefit of all members of the class under Rule 42, Texas Rules of Civil Procedure. Under such rule, once the suit is filed, it may not be dismissed without permission of the court. The reason is that the rule says so, and one reason the rule says so is because the named parties act not alone for themselves in prosecuting a common cause, but for all members of the class, and they may do nothing to prejudice the rights of the members of the class. Though suspension or expulsion for good cause might result from trial, any member of Subordinate Lodge No. 74 would have the right to take up the prosecution of the suit. The court in a true class suit could not dismiss the case without notice to all members of the class. In other types of class actions the court may require notice to all members of the class before dismissal.

The courts can thus adequately protect the litigation if litigants wish to do so. There are no Texas cases construing Rule 42 in this connection, but Federal Rules of Civil Procedure, rule 23, 28 U.S.C.A., is substantially the same as Rule 42, and it has been construed as we here construe Rule 42 on this matter. Webster Eisenlohr, Inc. v. Kalodner, 3 Cir., 145 F.2d 316.

To the suggestion that if relators are suspended, or expelled, this would prevent others from coming in, the answer is it should not if they have done nothing justifying action being taken against them. For them to join in the suit is not a legally tenable ground for disciplinary action, even if the constitution says so. The courts must remain available as the forum to which appeal for adjustment of wrongs can be made. We do not mean that if the parties have contracted not to resort to the courts until interorganization remedies have been exhausted, the courts will not enforce such a provision. In fact they will abate a suit for failure to comply except in cases where such appeal would be futile such as is alleged in Cause No. 509,854. However, to discipline a member for resorting to the courts is an entirely different matter. So other members should have no fear in joining the suit if they are not otherwise vulnerable. Of course should there be trials on trivial matters and extreme punishment as others sought to join the suit, we would scrutinize such action with extreme care in determining whether in fact discipline was not purely to interfere with our jurisdiction.

We do not mean to say or imply that any of the parties have been or will be guilty of anything that is charged, except insofar as relators have admittedly participated in Cause No. 509,854, and respondent has filed the charges enumerated. Otherwise we are proceeding purely on the pleadings.

We therefore grant injunctive relief to the extent prayed for as shown by our judgment which is attached hereto and made a part hereof and marked Exhibit A.

The costs in this proceeding are assessed against respondent.

### Exhibit A

On the 19th day of March, 1959, came on to be heard the application of C. L. Pait,

J. W. Langham, Alfred H. Wendelken, Sidney Fowler, J. E. McKnight, Ne Cochran, E. W. Titsworth, T. D. Watkins, and J. D. Martin, herein called relators, for an injunction against International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, herein called respondent, leave to file said application having been granted by the Court on March 17, 1959, when came relators by their attorney of record, the Honorable Frederick W. Robinson, and came also the respondent by and through its attorney of record, the Honorable Sewall Myer, respondent having through said attorney of record waived the issuance and service of formal notice of the granting by the Court of leave to file the application and, having waived notice of the time of hearing, and the Court, having read the pleadings and supporting affidavits of the parties and heard argument of counsel, finds as follows:

1. This Court now has pending before it on motion for rehearing the motion of respondent (respondent being an appellee) Cause No. 13,358, which cause is an appeal from the 55th District Court of Harris County, Texas, of District Court Cause No. 509, 854.

2. This Court has jurisdiction to enjoin respondent from doing any threatened act that will interfere with or oust the jurisdiction over the appeal pending before it.

3. Respondent has preferred the following charges against relators and has appointed a Trial Committee to hear said charges:

"1. (name of accused) has violated the provisions of Article V, Section 5 of the International Lodge Constitution and Article XIV, Section 4 of the Subordinate Lodge Constitution by joining, as a party plaintiff, in the filing, institution of, and engaging in further procedures and activities in, a case filed on July 7, 1958 in the District Court of Harris County, Texas, Number 509854, and in which case the Interna-

tional Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, District Lodge No. 60 of the said International Brotherhood, W. A. Calvin, Joe P. McCollum, Orval C. Logue, John T. Kirtley and Leeland F. Head were named as defendants.

"By the filing and institution of the said case, and engaging in further procedures and activities therein, (name of accused) asserted rights allegedly growing out of his membership in the International Lodge and Subordinate Lodge No. 74, without having first exhausted the procedures for hearing, trial and appeal provided for by the International Lodge Constitution and/or the Subordinate Lodge Constitution.

"2. (name of accused) has endeavored to create dissension, among the members of Subordinate Lodge No. 74, has worked against the interest and harmony of the International Brotherhood and Subordinate Lodge No. 74, and has advocated and encouraged the dissolution of the District Lodge No. 60 of the International Brotherhood, all as defined and proscribed by Article XIII, Section 1 of the Subordinate Lodge Constitution, in this, to-wit: the said (name of accused) has attended and participated in rump meetings and, at such meetings, has advocated the dissolution of District Lodge No. 60."

4. In this original proceeding before this Court respondent has filed under the oath of one of its Vice Presidents, to wit, J. P. McCollum, the following specifications stating that only such matters will be inquired into, and relators will be tried only on such specifications:

"(a) The participation by one or more of Relators in the publishing in the newspapers of articles and statements calculated to create dissention among the members of Subordinate

Lodge No. 74 and to injure the interest and harmony between International Brotherhood and Local 74 but unrelated to the creation or continued existence and operation of District 60.

"(b) The participation by one or more of the Relators in the acts of Local 74 in ordering the reduction of field dues below the amounts fixed and put into effect by the International Brotherhood in 1947 and which acts were in violation of the established policies of the International Brotherhood.

"(c) The making by one or more of Relators of untrue statements and the giving of published interviews containing untrue statements and false accusations against the International Brotherhood and against officers and representatives of the International Brotherhood unrelated to the creation or continued existence and operation of District 60.

"(d) Advocation and encouragement of members of Local 74 to not pay the field dues prescribed and put into effect by the International Brotherhood and the making of untrue statements to members of Local 74 as to the International Brotherhood authorizing the reduction in field dues unrelated to the creation or continued existence of District 60.

"(e) Threatening officials and representatives of the International Brotherhood and the President of Local 74 and other members of Local 74, with violence and the abusing of and unlawfully seeking to intimidate such officers and representatives, President and members of Local 74 and unlawfully interfering with the orderly conducting of the business of Local 74 in the manner prescribed in the International and Subordinate Lodges Constitutions, and also threatening the President of Local 74 and otherwise intimidating him to the extent that for his own personal safety he absents himself from the regular meetings of Local 74.

"(f) Attending and taking part in meetings of Local 74 not authorized by such constitutions and advocating at such meetings actions which are violative of such constitutions which actions are unrelated to the creation or continued existence and operation of District 60.

"(g) The participation and encouragement by one or more of Relators of the establishment of a picket line in the vicinity of the office of District 60 designed to intimidate and which did intimidate and prevent members of Local 74 from accepting employment.

"(h) The participation in acts and conduct at regular meetings of Local 74, which intimidated other members of Local 74 from attending such regular meetings and from participating in the affairs and matters being considered at such regular meetings and disrupting the orderly conduct of such regular meetings entirely unrelated to the creation or continued existence and operation of District 60.

"(i) The participation by one or more of Relators in the diversion of collected field dues to purposes contrary to the established policies of the International Brotherhood unrelated to the creation or existence and operations of District 60.

"(j) The participation in efforts to induce the Senate Racket Committee and its Chairman and Attorney to take action against the International Brotherhood intended and calculated to cause undeserved embarrassment and expense and unjustified adverse publicity against the International Brotherhood and its officers, unrelated to, the creation or continued existence and operation of District 60.

"(k) Participation by one or more of Relators in permitting attorney Robin-

son & newspaper reporters to be present during a meeting of Local 74 which is in violation of the constitutions of the International Brotherhood and Subordinate Lodge constitutions at which meetings and discussions were had of matters which were detrimental to the International Brotherhood and designed to create dissention among the members of Local 74 and were against the interests and harmony of the International Brotherhood and Local 74 and at which regular meetings one or more of Relators conferred and advised with Attorney Robinson in connection with such matters.

"(l) Participation by one or more of the Relators in the sending of the business agent of Local 74 to Washington to confer with certain public officials and representatives of the State of Texas in an effort to get some character of action taken against the International Brotherhood intended and calculated to cause undeserved embarrassment, expense and adverse publicity against the International Brotherhood and its officers, unrelated to the creation or continued existence and operation of District 60.

"(m) Participation by one or more Relators in efforts to have the President of Local 74 removed as President of Houston Building & Construction Trades Council and as a delegate to such council, such actions being intended and calculated to cause dissention among the members of Local 74 and to intimidate the President of Local 74 from properly performing his duties as President of Local 74.

"(n) The participation by one or more of Relators in conversations and conferences in Houston, Texas with the attorney for the Senate Racket Committee in an effort to cause embarrassment and unjustified criticism of International Brotherhood and of its officers and representatives and to gain publicity in the newspapers adverse to the International Brotherhood and calculated to cause dissention between members of Local 74 and against the interests and harmony of International Brotherhood and Local 74, unrelated to the creation or continued existence and operation of District 60."

5. The Court finds that in order to protect its jurisdiction in Cause No. 13,358, it is necessary that injunctive relief to the extent hereinstated be granted.

It is, therefore, ordered, adjudged and decreed by the Court that respondent, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, be and it is hereby enjoined from trying relators on charges that they or any of them violated the constitution of said International Brotherhood or the Subordinate Lodge constitution by the filing and prosecuting of Cause No. 509,854 in the District Court of Harris County, Texas.

It is further ordered, adjudged and decreed that respondent, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, be and is hereby enjoined from trying relators or any of them on charges that they have advocated and encouraged the dissolution of District Lodge No. 60 and have attended and participated in rump meetings at which the dissolution of District Lodge No. 60 was advocated.

It is further ordered, adjudged and decreed that respondent, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, be and is hereby enjoined from trying relators or any of them for participating in any meetings of Subordinate Lodge No. 74 in so far as said meetings had for their purpose the discussion of the propriety of filing, the filing, or the prosecution of said Cause No. 509,854, or any legal proceedings in connection therewith; or where the matter of the use of peaceable means was advocated in soliciting the International or its

representatives to dissolve District Lodge No. 60.

It is further ordered, adjudged and decreed that respondent, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, be and it is hereby enjoined from trying relators or any of them for peaceably soliciting a member or members of Subordinate Lodges Nos. 74, 132 or 577, to join them in the prosecution of Cause No. 509,854 or join them in advocating the dissolution of District Lodge No. 60 by petition to said International or its representatives.

It is further ordered, adjudged and decreed that respondent, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, be and it is hereby enjoined from trying relators or any of them for permitting their attorney Frederick W. Robinson or a newspaper reporter to be present during meetings of Subordinate Lodge No. 74 where there was to be discussed or was discussed anything pertaining to said Cause No. 509,854, and its prosecution, or there was discussed petition to said International or its representatives for the dissolution of District Lodge No. 60.

This injunction shall be effective immediately and continue in full force and effect until the Supreme Court of Texas should grant a writ of error in Cause No. 13,358, now pending in this Court, and, should said Supreme Court for any reason refuse to grant a writ of error, this injunction shall remain in full force and effect until a District Court of this State of Texas has heard said Cause No. 509,854 on its merits on hearing for a temporary injunction.

It is further ordered that the clerk of this Court do forthwith issue a writ of injunction against the respondent International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, its agents and attorneys.

It is further ordered that the respondent pay all costs incurred by reason of this proceedings.

Entered this 23rd day of March, 1959.

WOODRUFF, Justice (dissenting in part).

While I concur in the ruling to let the writ of injunction issue, I respectfully dissent in the opinion of the majority setting forth the premise therefor and submit that the relief should be broader in its scope for the reasons hereinafter stated.

It is clear as we have heretofore held that under the allegation contained in the petition in the main suit filed in the trial court a justiciable cause of action was stated which warrants a hearing on the merits. In testing the sufficiency of the petition, we were required under the law to accept as true all of the allegations therein contained. The plaintiffs therein are the identical parties who are the relators in this proceeding. Moreover, it cannot be disputed that the petition stated a cause of action which is common to the entire membership, of which each member is a part, of Local 74, and which in my opinion makes it a true class action. See McDonald, Tex. Civil Practice, § 3.34, Vol. 1, p. 272. The jurisdiction of the trial court over this cause, as stated in the pleadings, attached immediately upon the filing of the petition and request for the issuance of citation thereon. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063. From that moment, the action became subject to the applicable laws, statutes and Rules of Procedure of this State.

As I view Rule 42, the named plaintiffs, Pait et al., immediately upon invoking the jurisdiction of the trial court by filing the petition and requesting issuance of citation lost their individual identity as litigants and became, in the eyes of the law, representatives of the class in whose behalf the suit was instituted, and whose rights became

subject to judicial ascertainment whether individually named or not. They were the functionaries through whom the court obtained jurisdiction over this class action. In order to enable the courts to exercise that jurisdiction, it is necessary that the class be represented. In recognition of that essential it is settled that once the jurisdiction of the court has been invoked in such an action, the petitioners can neither dismiss nor compromise the action without the sanction of the court. Rule 42(b), T.R.C.P. This being true, it necessarily follows that they are precluded from thwarting the judicial processes which have been invoked for the protection of the class by withdrawing from the case or voluntarily doing any other act which would deprive them of being representative of the class and thereby interfere with the power of the courts to proceed.

The relators here who, as heretofore stated, were the identical petitioning parties through whom this class action was instituted and also the appellants in the appeal now pending in this Court, filed this original proceeding in this Court on March 17, 1959, seeking an injunction to restrain the respondent, the appellee in said pending cause, from trying relators in the tribunals of the respondent during the time that this Court's jurisdiction obtains. Relators inter alia allege in the application that the charges and trials in respondent's tribunals are designed to inflict punitive measures against relators for resorting to civil authority and that they "in all probability, will be suspended or expelled from membership in their union, which, in all probability, will result in the abandonment of all efforts to obtain relief in the civil courts by other members of Local No. 74 because of the threat and fear of reprisals by Respondent."

Also incorporated in relators' verified application is a copy of the charges and notice of trial which have been served on all of the relators by the functionaries of respondent. The first charges each of the relators with a violation of International's Constitution which subjects them to punishment

for filing this action in the District Court before resorting to the tribunals of the Brotherhood. The other charge upon which a trial is threatened is an accusation that each of the relators has worked against the interest and harmony of the International and Subordinate Lodges by attending and participating "in rump meetings and, at such meetings, has advocated the dissolution of Dist. Lodge No. 60."

During the pendency of this application, and during the time a temporary injunction has been in force, twelve additional charges have been suggested by respondent, upon which, so it is contended, the respondent should be permitted to try relators in its tribunals. As I interpret the provisions of respondent's Constitution, the relators, if found guilty by the Brotherhood's trial tribunal, on any of them, could be subjected to expulsion or suspension of membership from the Brotherhood.

Respondent's basic contention as I understand it is that the courts cannot lawfully prohibit or interfere with respondent's internal matters and that under its Constitution it has the right to try the relators on these charges, though as it is admitted "some of them" may be punished by expulsion or suspension from membership.

It should also be noted that all of the relators have filed affidavits in this proceeding either denying that they ever committed the acts of which they stand accused or setting forth extenuating circumstances which tend to exculpate them. This, however, is not decisive of the question as I see it.

Reverting to the respondent's contention that it has the right to try the relators before its own tribunals, it concedes, through counsel, that it may properly be restrained from trying relators on the first charge which involves relators' violation of its Constitution by filing this suit in the civil courts before resorting to its judicial forums. The reasoning here is obtuse. Evidently it is based upon the opinion of this Court that under the allegations contained

in the petition filed in the trial court, relators had the right as representatives of the class to prosecute this cause in the courts irrespective of that provision of the respondent's constitutional provisions prohibiting them from doing so. We did not hold this provision void. We only held that under the Constitution of the United States and statutory laws of our State, respondent's Constitution could not under the allegations of the petition stand as a bar to their seeking redress in courts of law.

The concession seeks to avoid the issue here because our holding only concerned the rights of the relators to institute and prosecute this suit. Consequently the issue here concerns the authority of this Court to protect and maintain its jurisdiction over this suit. To do so it is essential to have the parties litigant before us. The law, as I view it, which prevents those instituting a class action from withdrawing or stifling such litigation should be at least as applicable to those resisting it.

Respondent has suggested that its trials should not be enjoined so long as they are not arbitrary and unfair to the accused though they are the parties who instituted this suit, and in this connection it is purposed that a transcript of the proceedings will be delivered to this Court for the purpose, as I take it, of review. This procedure in my opinion could involve this Court in endless proceedings in reviewing the actions of respondent's tribunals wherein members of the class who have instituted this suit may have been deprived of their status as class representatives in this cause by the imposition of penalties of expulsion or suspension of membership. Moreover, what power this Court might have to order the reinstatement of a member if found to

have been aribitrarily and unjustly tried, is not clear because his relief would be peculiar to him as well as a representative of the class. Respondent further argues that other members who are not now nominal parties to this action may be substituted for those who may be expelled or suspended from respondent's membership. If this is sound reasoning, then indeed any order of reinstatement of a nominal party plaintiff in this class action would be peculiar to *him* and thus involve issues entirely foreign to those before us now.

In the writer's opinion, if this Court has the authority under the law to preserve its jurisdiction over this cause by enjoining any act by respondent which would interfere therewith, then the injunction should be issued to restrain respondent from taking any action which would either directly or indirectly result in expelling or suspending any of the parties who instituted this suit from membership in Local No. 74 or the International Brotherhood during the period of time this cause remains under the jurisdiction of this Court.

Let it be noted at this point that the respondent under such an order would be free to try in its tribunals any of the parties who instituted this suit for any offense under its constitution and assess any penalty its tribunal deemed warranted except, however, one which would either directly or indirectly deprive such party of his status as a representative of the class in whose behalf this action is prosecuted.

Though the writ of injunction as ordered by the majority of the Court is not as broad as in my opinion it should be for the reasons set forth above, the writer concurs in the order of the majority with the reservations herein expressed.